Deborah KUENNEN, Respondent,

v.

CITIZENS SECURITY MUTUAL IN-
SURANCE COMPANY, Appellant.

No. C4–82–1169.

Supreme Court of Minnesota.

March 18, 1983.

Michael O. Burns and Paul Widick, St. Cloud, for appellant.

Donohue, Rajkowski & Hansmeier, St. Cloud, for respondent.

SCOTT, Justice.

Defendant Citizens Security Mutual Insurance Company (Citizens) appeals from a summary judgment in favor of plaintiff Deborah Kuennen in this suit to recover insurance benefits. The sole issue on appeal is whether this case is controlled by our recent decision in *Roepke v. Western National Mutual Insurance Co.*, 302 N.W.2d 350 (Minn.1981). We hold that it is not and, accordingly, reverse.

On May 9, 1981, David Kuennen, plaintiff's husband, was killed in an automobile accident. At the time of his death he was driving a 1978 Cadillac owned by Copy Systems, Inc. and insured by it under a policy with Citizens. Copy Systems, Inc. also owned three other vehicles which were insured under the same policy. The policy provided coverage for survivor's loss benefits of $10,000 per vehicle.

Copy Systems, Inc. is a closely held corporation. David Kuennen owned 51% of the shares and one Michael Beltnick owned the remaining 49%. Only two of the corporation's four automobiles were actually garaged at the business premises and used for business pursuits. The Cadillac was used by David Kuennen as his personal car and was garaged at his home. The fourth vehicle was similarly used by plaintiff as a family car. The Kuennens owned no other motor vehicles.

Following the accident Citizens paid plaintiff survivor's loss benefits of $10,000 under the coverage on the Cadillac. Citizens took the position that David Kuennen was an "eligible injured person" under the terms of the policy because he was injured "while occupying the insured motor vehicle" and that he was an employee injured while driving a vehicle furnished by his employer

under Minn.Stat. § 65B.47, subd. 2 (1982) for whom the applicable security was the policy covering the vehicle.

Plaintiff claimed additional survivor's loss benefits under the coverages on the other three vehicles owned by Copy Systems, Inc. Her theory, based on *Roepke v. Western National Mutual Insurance Co.,* 302 N.W.2d 350 (Minn.1981), is that because David Kuennen was the majority shareholder of Copy Systems, Inc. the corporate veil should be pierced for the purpose of treating him as the named insured on the automobile policy. Once that is done the applicable priority level is Minn.Stat. § 65B.47, subd. 4(a) (1982) and stacking of the three coverages can occur. Plaintiff commenced this suit when Citizens rejected her claim and the trial court, on cross motions for summary judgment, decided in her favor.

We cannot agree that this case is controlled by *Roepke.* There the decedent was president and sole shareholder of a small corporation. The corporation owned the van the decedent was operating at the time of his death plus five other vehicles. All six were used by the decedent and members of his household as family automobiles. They owned no other vehicles. On those facts we were persuaded that the purpose of the no-fault act would be best fulfilled by piercing the corporate veil and holding that the decedent was an "insured" under the corporate policy. 302 N.W.2d at 353.

The *Roepke* opinion emphasizes throughout that the decision is limited to its unique facts. In closing we stated: "However, we limit this holding to the facts peculiar to this case, the most significant of which are that decedent was the president and sole shareholder of the named insured corporation; the vehicles insured by defendant were used as family vehicles; and neither decedent nor members of his household owned any other vehicles." 302 N.W.2d at 353. Here two of the three significant facts are missing. Decedent was a majority shareholder rather than a sole shareholder and only some of the vehicles were used as family vehicles. In our view these distinctions are crucial. Ownership of corporate

shares and use of corporate property are important because they indicate the degree of identity between a shareholder and a corporation. Where that degree is not high the alter ego theory which underlies the doctrine of piercing the corporate veil cannot operate. We, therefore, adhere to our statement in *Roepke* that the rule there announced has only very particular application. We did not intend *Roepke* as the first step toward apportioning corporate policies to shareholders on the basis of stock ownership and number of company cars put to family use.

Reversed.