465 N.W.2d 428 (1991)
Michael David MEISTER, et al., Appellants,
v.
WESTERN NATIONAL MUTUAL INSURANCE COMPANY, Mutual Service Casualty Insurance Company, et al., Respondents.
No. C1-90-1997.
Court of Appeals of Minnesota.
January 29, 1991.
Review Granted March 27, 1991.
*429 H.L. Newby, Jr., Keith M. Carlson, Newby, Lingren, Newby & Carlson, Ltd., Cloquet, for Michael David Meister, et al.
Gregory J. Johnson, Theodore J. Smetak, Arthur, Chapman & McDonough, Minneapolis, for Western Nat. Mut. Ins. Co.
Richard J. Kruger, Richard J. Kruger & Associates, St. Paul, for Mut. Service Cas. Ins. Co. and Gunflint Lodge, Inc.
Considered and decided by KALITOWSKI, P.J., and SCHUMACHER and DAVIES, JJ.

OPINION
DAVIES, Judge.
The trial court granted summary judgment for Western National Mutual Insurance Company (Western), holding that an employer's policy takes priority over any family no-fault insurance policy. Appellants Michael and David Meister challenge the priority determination or, in the alternative, claim they are entitled to collect benefits to the extent Western's family policy provides benefits in excess of basic benefits. We agree with the alternative claim and reverse.

FACTS
On August 9, 1988, after finishing work for the day, Michael Meister and Richard Detjen, employees of Gunflint Lodge, asked Steven Morrison, another employee of the lodge, if he would take them and a raft to a spot upstream on the river. Morrison, who was working, had been directed to take the lodge's pick-up truck and retrieve some rafts that belonged to the lodge. He agreed to take Michael and Richard upstream with their raft after he picked up the employer's rafts. The rafts were retrieved and placed in the open bed of the pick-up truck. Michael was riding on top of the rafts when one was blown out of the truck, catapulting him onto the road. Michael suffered severe head injuries.
At the time of the accident, the pick-up truck was insured under a commercial automobile insurance policy issued to Gunflint Lodge by Mutual Service Casualty Insurance Company (MSI). The policy provided the mandatory basic economic loss coverage limits of $20,000 for medical expense benefits and $20,000 for income loss benefits.
In addition, Michael Meister was insured under the terms of a personal automobile insurance policy issued to his father, David Meister, by Western. That policy provided double coverage, $40,000 for medical expense benefits and $40,000 for income loss benefits.
Michael submitted an application for no-fault benefits under the policy issued by MSI. MSI tendered a $20,000 draft to Michael for medical expenses. In addition, Michael applied for benefits from Western, which refused to pay, asserting that his exclusive source of benefits for the accident was the policy issued to Gunflint Lodge by MSI. Michael rejected the draft tendered by MSI, contending that he was entitled to no-fault benefits from Western as well.
After commencing this action, the parties stipulated to the facts. The trial court granted summary judgment in favor of Western, concluding that MSI, insurer of his employer's vehicle, provided the sole source of economic loss coverage for injuries Michael sustained in the accident.

ISSUE
Did the trial court err in granting summary judgment for Western based on the commercial automobile insurance policy issued by MSI being the exclusive source of insurance coverage to Michael Meister for injuries he sustained in the accident?

*430 ANALYSIS
According to the parties' stipulation, there are no genuine issues of material fact and the only issue is whether the trial court correctly applied the law. When the facts are undisputed, the trial court's conclusions of law do not bind this court. A.J. Chromy Constr. Co. v. Commercial Mechanical Servs., Inc., 260 N.W.2d 579, 582 (Minn. 1977).
The Minnesota No-Fault Automobile Insurance Act establishes priorities for payment of "basic economic loss benefits" when automobile accident injuries are covered by two or more insurance policies. It provides:
Subdivision 1. In case of injury to the driver or other occupant of a motor vehicle * * * if the accident causing the injury occurs while the vehicle is being used in the business of transporting persons or property, the security for payment of basic economic loss benefits is the security covering the vehicle or, if none, the security under which the injured person is an insured.
Subd. 2. In case of injury to an employee * * * if the accident causing the injury occurs while the injured person is driving or occupying a motor vehicle * * * furnished by the employer, the security for payment of basic economic loss benefits is the security covering the vehicle or, if none, the security under which the injured person is an insured.
* * * * * *
Subd. 4. In all other cases, the following priorities apply:
(a) The security for payment of basic economic loss benefits applicable to injury to an insured is the security under which the injured person is an insured.
Minn.Stat. § 65B.47 (1988) (emphasis added).
The facts are undisputed that the pick-up truck involved in the accident was owned by Gunflint Lodge. Respondents argue that either subdivision 1 or subdivision 2 apply to give the Lodge insurance priority over any family policy under subdivision 4. At the time of the accident, the pick-up truck was transporting business property owned by the lodge. Appellants argue, however, that at the time of the accident, the pick-up truck was being used for the purpose of a side trip to take Michael Meister to the river, not for the business of the employer. Thus, appellants argue, Minn.Stat. § 65B.47, subd. 1, does not apply because the vehicle was not "being used in the business of transporting persons or property." We view the coverage of subdivision 1 as almost certain under these circumstances, but, to avoid whatever question might exist on the applicability of subdivision 1, we choose instead to decide the issue under subdivision 2.
The coverage of subdivision 2 is clearly applicable. Michael was an employee in his employer's vehicle. The statute does not require that the vehicle be used in the course of business. The coverage provided under the policy issued by MSI, therefore, must provide the basic economic loss benefits because of subdivision 2.
We now turn to the question of whether the additional insurance purchased by David Meister from Western may apply.
In 1985, the Minnesota No-Fault Automobile Insurance Act was amended to include an anti-stacking provision:
Unless a policyholder makes a specific election to have two or more policies added together the limit of liability for basic economic loss benefits for two or more motor vehicles may not be added together to determine the limit of insurance coverage available to an injured person for any one accident. An insurer shall notify policyholders that they may elect to have two or more policies added together.
See Minn.Stat. § 65B.47, subd. 7 (1988). This amendment has created an entirely new situation. We no longer have traditional stackings. Now, when insureds elect the "added together" coverage allowed under Minn.Stat. § 65B.47, subd. 7, they are not choosing to stack "basic economic loss benefits," as contemplated by pre-1985 *431 stacking cases.[1] Before 1985 stacking occurred by operation of law; now an insurance purchaser chooses to have double coverage; to buy voluntarily another $40,000 of insurance over and above basic economic loss benefits.
The No-Fault Act makes explicit what constitutes basic economic loss benefits.
Subd. 10. "Basic economic loss benefits" means benefits as described in section 65B.44.
Minn.Stat. § 65B.43, subd. 10 (1988).
Basic economic loss benefits shall provide reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle, subject to any applicable deductibles, exclusions, disqualifications, and other conditions, and shall provide a maximum of $40,000 for loss arising out of the injury of any one person, consisting of:
(a) $20,000 for medical expense loss arising out of injury to any one person; and
(b) a total of $20,000 for income loss, replacement services loss, funeral expense loss, survivor's economic loss, and survivor's replacement services loss arising out of the injury to any one person.
Minn.Stat. § 65B.44, subd. 1 (1988) (emphasis added).
Benefits greater than $20,000 medical benefits and $20,000 wage loss benefits are outside this definition. So what is a benefit exceeding the $40,000 maximum?
In our view an insured choosing the election of a second policy is choosing to add additional first-party coverage. These are "additional benefits" as provided for in section 65B.49, subdivision 7 (1988),[2] and "optional economic loss benefits" as referred to in sections 65B.53, 65B.58, and 65B.60.
Minn.Stat. § 65B.47 establishes the priority of security for payment of "basic economic loss benefits" and no more. That section does not apply to any added benefits that the Meisters purchased. As to the $40,000 of basic economic loss benefits, we go through the priorities and determine which policy will apply. Here the MSI policy. Then, we turn to the personal policy to add whatever "additional" or "optional" protection appellants purchased. Although MSI is liable for the basic economic loss benefits, Western is liable for the additional first-party coverage appellants purchased from it.
Under the circumstances of this case, we are not talking about "stacking." We are not stacking the same coverage, rather we are determining first, which policy covers the basic economic loss benefits and, second, giving effect to additional protection that has been purchased by Michael's father, and requiring the insurer to pay the added benefits that it contracted to pay to covered members of the Meister family if seriously injured in an automobile accident.
The result below is incongruous. It gives family members protection at twice the statutory minimum at all times except when in a commercial bus, a working truck, or an employer's vehicle. By applying the priority sections only to basic economic protection coverage we give effect at all times to the greater coverage contemplated when the policy was bought, and when it was sold.

DECISION
We conclude that the trial court erred in its application of the law and reverse its grant of summary judgment to Western. Although the trial court correctly held that MSI is liable for the basic economic loss *432 coverage, it erred by not ruling that Western is liable for the additional coverage purchased by David Meister and under which Michael Meister is an insured.
Reversed.
NOTES
[1] The following cases prohibiting "cross-priority" stacking have been made inapplicable in this kind of circumstance by the statutory change: Koons v. National Family Ins. Co., 301 N.W.2d 550, 553-54 (Minn.1981); Murphy v. Milbank Mut. Ins. Co., 320 N.W.2d 423, 425 (Minn.1982) (citing Wasche v. Milbank Mut. Ins. Co., 268 N.W.2d 913 (Minn.1978)); and Kelsey v. State Farm Mut. Auto. Ins. Co., 365 N.W.2d 795, 798 (Minn.App.1985).
[2] Subd. 7. Additional Benefits and Coverage Not Prohibited. Nothing in sections 65B.41 to 65B.71 shall be construed as preventing the insurer from offering other benefits or coverages in addition to those required to be offered under this section. Minn.Stat. § 65B.49, subd. 7 (1988).